# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JACK'S MAGIC PRODUCTS, INC.,

    Plaintiff,

v.                                            Case No: 8:22-cv-848-WFJ-SPF

STAR BRANDS LTD.; GSD
DISTRIBUTION LLC; and
PRIME COMMERCE, LLC,

    Defendants.

_____/

## ORDER DENYING MOTION

This matter comes before the Court upon the Motion to Strike, Dkt. 31, filed by Defendants Star Brands Ltd. ("Star Brands"), GSD Distribution LLC ("GSD"), and Prime Commerce, LLC ("Prime Commerce"). Plaintiff Jack's Magic Products, Inc. ("Jack's Magic"), responded in opposition. Dkt. 32. Upon careful consideration, the Court denies Defendants' motion.

## BACKGROUND

Plaintiff Jack's Magic is a Florida corporation that manufacturers, markets, and sells products that remove and prevent stains and discoloration. Dkt. 25 ¶ 23. Among Jack's Magic's products is a metal and mineral stain remover called "The Pink Stuff." *Id.* ¶ 25. Jack's Magic has been selling this product throughout the

United States using its "THE PINK STUFF" trademark since 1994. *Id.* ¶ 26. On September 17, 2002, Jack's Magic obtained a federal trademark registration from the United States Patent and Trademark Office for this trademark. *Id.* ¶ 27. The federal trademark registration became incontestable in December 2007. *Id.* ¶ 28.

In early 2021, Jack's Magic learned that Defendant Star Brands was advertising and selling competing cleaning products named "THE PINK STUFF." *Id.* ¶ 32. Though Star Brands is a manufacturing company based in the United Kingdom, it sells its THE PINK STUFF products online and in the United States. *Id.* ¶¶ 3, 8. On January 18, 2021, counsel for Jack's Magic sent a cease and desist letter to Star Brands, requesting that Star Brands cease its use of Jack's Magic's trademark or any confusingly similar mark. *Id.* ¶ 33.

Counsel for Jack's Magic received a response from an attorney representing both Star Brands and Defendant GSD. *Id.* ¶ 34. In this response letter, Star Brands and GSD's attorney indicated that GSD, an affiliate of Defendant Prime Commerce, was "the exclusive North American distributor for Star Brands" and distributed Star Brands' THE PINK STUFF products within the United States. *Id.* ¶¶ 35, 63. The parties' attorneys thereafter discussed the cease and desist letter over the phone, with Star Brands and GSD's attorney purportedly communicating an offer to license Jack's Magic's trademark. *Id.* ¶ 36.

Throughout the following year, the three companies attempted to negotiate a

licensing agreement. *Id.* ¶ 37. Though the parties exchanging multiple terms sheets and draft license agreements, they failed to reach an agreement and ceased negotiations on March 15, 2022. *Id.* ¶¶ 38, 41.

Despite Star Brands and GSD allegedly indicating during negotiations that they were waiting to obtain a licensing agreement before selling Star Brands' THE PINK STUFF products in the United States, Jack's Magic learned that the companies were already selling the products in Walmart and Home Depot stores in the United States. *Id.* ¶¶ 39, 42. Jack's Magic also discovered that Star Brands filed six federal trademark applications for marks incorporating the term "The Pink Stuff" in the weeks after the parties' negotiations ceased. *Id.* 43–44. Defendants later allegedly began using terms, phrases, and advertising efforts that would likely cause customers to confuse the parties' products and mistakenly associate Jack's Magic's trademark with Defendants. *Id.* ¶¶ 43–58.

Accordingly, Jack's Magic filed the present suit against Defendants for trademark infringement and unfair competition under the Lanham Trademark Act, 15 U.S.C. §§ 1114, 1125. Defendants now move to strike the allegations in Jack's Magic's Amended Complaint concerning the parties' unsuccessful settlement negotiations. Dkt. 31.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may order

stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is a drastic remedy and disfavored by courts. *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1259 (M.D. Fla. 2020). "Therefore, a motion to strike may be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Id.* (internal quotes and citations omitted).

## ANALYSIS

In their Rule 12(f) motion, Defendants move this Court to strike from the Amended Complaint paragraphs 14, 15, 18, 19, 33, 36 through 41, and 61 as immaterial, impertinent, and scandalous. Dkt. 31 at 1. Defendants contend that these paragraphs improperly disclose confidential settlement negotiations in violation of Federal Rule of Evidence 408 and have no bearing on Jack's Magic's claims. *Id.* at 1, 8.

Jack's Magic asserts that Defendants' motion fails for multiple reasons. First, Jack's Magic contends that Defendants have waived their right to file a motion to strike these allegations. Dkt. 32 at 4–5. In support of this contention, Jack's Magic notes that the same allegations were made in its original complaint, yet the Defendants did not previously move to strike them. *Id.* Next, Jack's Magic states that Rule 408 does not govern the striking of allegations set forth in a pleading. *Id.* at 12–13. Finally, Jack's Magic avers that the subject paragraphs are

not immaterial, impertinent, or scandalous such that they should be stricken pursuant to Rule 12(f). *Id.* at 5−12.

As an initial matter, the Court finds Jack's Magic's argument of waiver to be unpersuasive. Jack's Magic has not cited—nor has this Court found—any case in which a defendant that did not move to strike allegations in an original complaint waived the right to bring a motion to strike those allegations as re-asserted in an amended complaint.

However, Jack's Magic's other arguments have merit. Rule 12(f) concerns "the striking of materials from pleadings, *not* evidence." *Seager v. Hartford Ins. Co. of Midwest*, No. 2:2-cv-728-FtM-38MRM, 2020 WL 6305625, at *3 (M.D. Fla. Oct. 28, 2020) (emphasis in original). While Defendants contend that the subject paragraphs must be stricken as improper disclosures of the parties' settlement negotiations under Rule 408, Rule 408 is a rule of evidence that does not govern the striking of allegations set forth in pleadings. *See Harris v. Torus Nat'l Ins. Co.*, No. 8:14-cv-1001-T-33AEP, 2014 WL 3053257, at *3 (M.D. Fla. July 7, 2014) (allegation about parties' settlement agreement should not be stricken under Rule 12(f) as improper under Rule 408); *see also Marcura Equities FZE v. Schulz*, No. 2:17-cv-508-FtM-99CM, 2018 WL 1757339, at *2 (M.D. Fla. Apr. 12, 2018); *Blake v. Batmasian*, 318 F.R.D. 698, 702 (S.D. Fla. 2017). Rule 408 concerns the admissibility of evidence, and the Court is not examining that issue at

this time.

Moreover, while Defendants claim the subject paragraphs are immaterial, impertinent, and scandalous, they fail to adequately support this position. For purposes of Rule 12(f), an allegation is immaterial if it has no value in developing the issues in a case. *Regions Bank v. Kaplan*, 2014 WL 1292888, at *2 (M.D. Fla. Mar. 31, 2014). Impertinent allegations are those that are irrelevant and could not be put in issue or given in evidence. *Id.* Relatedly, allegations are scandalous if they are irrelevant and grossly disgraceful. *Blake*, 318 F.R.D. at 701 n.4.

Defendants primarily point to Rule 408 as a basis for striking the subject paragraphs as immaterial, impertinent, and scandalous. *See* Dkt. 31 at 6−11. Again, Rule 408 does not require the striking of any allegations from pleadings. As Defendants acknowledge, the problem presented by mentioning parties' settlement negotiations is the possibility of prejudicing the trier of fact against a party. *Id.* at 3, 7. The concern of prejudicing the trier of fact via such evidence is not an issue at the pleading stage. *See Blake*, 318 F.R.D. at 702.

To the extent that Defendants assert that the settlement negotiations have no bearing on Jack's Magic's claims, the Court does not find that these allegations entirely lack value or relevance at this stage. As Jack's Magic correctly notes, Rule 408 is not an absolute bar on evidence of settlement negotiations. *See* Dkt. 32 at 13; Fed. R. Evid. 408(b). With Defendants having previously raised the defense of

laches, the parties' settlement negotiations may be relevant to "negat[e] a contention of undue delay." *See* Fed. R. Evid. 408(b).

While there may ultimately be merit to Defendants' Rule 408 arguments,[1] those concerns are more appropriately addressed through a motion in limine. *See Marcura Equities*, 2018 WL 1757339, at *3; *ZSR Patlayici Sanayi A.S. v. Sarac Distribs. LLC*, No. 2:19-cv-864-FtM-38MRM, 2020 WL 1065231, at *4 (M.D. Fla. Mar. 5, 2020) (citing *Harris*, 2014 WL 3053257, at *4). Given these considerations, and because motions to strike are generally disfavored, the Court declines to strike the subject paragraphs.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion to Strike, Dkt. 31. Defendants shall answer the Amended Complaint, Dkt. 25, within **14 (fourteen) days**.

**DONE AND ORDERED** at Tampa, Florida, on September 8, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

---

[1] The Court expresses no opinion as to the admissibility of evidence concerning the parties' settlement negotiations at this time.